Slip Op. 17-94

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **EVONIK REXIM (NANNING) PHARMACEUTICAL CO. LTD. and EVONIK CORPORATION,** | |
| **Plaintiffs,** | |
| **and** | |
| **BAODING MANTONG FINE CHEMISTRY CO., LTD. and GEO SPECIALTY CHEMICALS, INC.,** | **Before: Jennifer Choe-Groves, Judge** |
| **Consolidated Plaintiffs,** | **Consol. Court No. 15-00296** |
| **v.** | |
| **UNITED STATES,** | **PUBLIC VERSION** |
| **Defendant,** | |
| **and** | |
| **GEO SPECIALTY CHEMICALS, INC.,** | |
| **Defendant-Intervenor.** | |

## OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. Department of Commerce's final determination in the 2013–2014 administrative review of the antidumping duty order on glycine from the People's Republic of China.]

Dated: August 1, 2017

Matthew T. McGrath, Barnes, Richardson & Colburn, LLP, of Washington, DC, argued for Plaintiffs Evonik Rexim (Nanning) Pharmaceutical Co. Ltd. and Evonik Corporation. With him on the brief was Stephen W. Brophy.

Ronald M. Wisla, Kutak Rock LLP, of Washington, DC, argued for Consolidated Plaintiff Baoding Mantong Fine Chemistry Co., Ltd. With him on the brief was Lizbeth R. Levinson.

David M. Schwartz, Thompson Hine LLP, of Washington, DC, argued for Consolidated Plaintiff and Defendant-Intervenor GEO Specialty Chemicals, Inc.

Robert M. Norway, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Nanda Srikantaiah, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Choe-Groves, Judge: This case involves glycine, which is a free-flowing crystalline material, like salt or sugar. Glycine is produced at varying levels of purity and is used as a sweetener or taste enhancer, a buffering agent, reabsorbable amino acid, chemical intermediate, and a metal complexing agent. See Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review at 3, A-570-836, (Oct. 5, 2015), available at http://enforcement.trade.gov/frn/summary/prc/2015-26270-1.pdf (last visited July 25, 2017) ("I&D Memo"). Evonik Rexim (Nanning) Pharmaceutical Co. Ltd. and Evonik Corporation (collectively, "Evonik" or "Plaintiffs"), Baoding Mantong Fine Chemistry Co., Ltd. ("Baoding"), and GEO Specialty Chemicals, Inc. ("GEO") (collectively, "Consolidated Plaintiffs") bring this consolidated action for judicial review of decisions made by the U.S. Department of Commerce ("Commerce" or "Department") during the 2013–2014 administrative review of the antidumping duty order on glycine from the People's Republic of China ("China" or "PRC"). See Glycine From the People's Republic of China, 80 Fed. Reg. 62,027 (Dep't Commerce Oct. 15, 2015) (final results of antidumping duty administrative review and partial rescission of antidumping duty administrative review; 2013–2014) ("Final Results"); I&D Memo; see also Glycine From the People's Republic of China, 60 Fed. Reg. 16,116 (Dep't Commerce Mar. 29, 1995) (antidumping duty order). Before the court are Rule 56.2 motions for judgment on the agency record filed by Evonik, Baoding, and GEO. See Evonik's Mot. J. Agency R. Under USCIT Rule 56.2, May 20, 2016, ECF No. 31; 56.2 Mot. J. Agency R., May 19, 2016, ECF No. 30; Mot. J.

Agency R., May 20, 2016, ECF No. 32.  For the reasons set forth below, the court sustains in

part and remands in part Commerce's final determination.

## <u>BACKGROUND</u>

Commerce initiated an administrative review of the antidumping duty order on glycine

from China on April 30, 2014, which covered subject merchandise that entered the United States

between March 1, 2013 and February 28, 2014.  <u>See</u> <u>Initiation of Antidumping and</u>

<u>Countervailing Duty Administrative Reviews and Request for Revocation in Part</u>, 79 Fed. Reg.

24,398, 24,400 (Dep't Commerce Apr. 30, 2014).  The Department issued preliminary results on

April 8, 2015.  <u>See</u> <u>Glycine From the People's Republic of China</u>, 80 Fed. Reg. 18,814, 18,814

(Dep't Commerce Apr. 8, 2015) (preliminary results of the antidumping duty administrative

review and preliminary intent to rescind, in part; 2013–2014); Decision Memorandum for the

Preliminary Results of Antidumping Duty Administrative Review, A-570-836, (Mar. 31, 2015),

<u>available at</u> http://enforcement.trade.gov/frn/summary/prc/2015-07952-1.pdf (last visited July

25, 2017) ("Preliminary Results Memo").  After Commerce issued preliminary results, Evonik,

Baoding, and GEO each submitted timely administrative case briefs contesting various aspects of

Commerce's determinations.  <u>See</u> Case Brief of Evonik Rexim (Nanning) Pharmaceutical Co.,

Ltd., CD 80 at bar code 3275324-01, PD 216 at bar code 3275328-01 (May 8, 2015);

Administrative Case Brief of Baoding Mantong Fine Chemistry Co., Ltd, CD 83 at bar code

3275402-01, PD 220 at bar code 3275404-01 (May 8, 2015) ("Baoding's Administrative Case

Brief"); GEO Specialty Chemicals' Case Brief, CD 82 at bar code 3275332-01, PD 218 at bar

code 3275335-01 (May 8, 2015).

GEO challenged the inclusion of certain information in Baoding's brief regarding the

final determination in a prior administrative review of the antidumping duty order on glycine

from China.  See Corrections to Transcript of July 22, 2015 Public Hearing for 2013–2014

Administrative Review, PD 228 at bar code 3294933-01 (July 30, 2015).  Commerce rejected

Baoding's case brief because Commerce found that the brief contained untimely-filed new

factual information.  See Resp. to August 7, 2015, Letter from Baoding Mantong Fine Chemistry

Co., Ltd. and Rejection of May 8, 2015, and August 7, 2015, Submissions by Baoding Mantong

Fine Chemistry Co., Ltd., PD 236 at bar code 3300878-01 (Aug. 27, 2015) ("Commerce Aug. 27

Letter").  The Department offered Baoding the opportunity to resubmit a redacted version of the

case brief by August 31, 2015.  See id.  Three days after that deadline expired, Baoding

submitted the redacted version of its case brief and a letter that urged Commerce to exercise its

discretion to accept the late-filed brief.  See Submission of Baoding Mantong's Revised

Administrative Case Brief and Revised Administrative Case Brief of Baoding Mantong Fine

Chemistry Co., Ltd, CD 86 at bar code 3302223-01, PD 237 at bar code 3302224-01 (Sept. 3,

2015).  The Department rejected Baoding's redacted brief as untimely and informed the

interested parties that it would not consider any arguments in Baoding's original brief.  See

Rejection of September 3, 2015, Submission by Baoding Mantong Fine Chemistry Co., Ltd., PD

240 at bar code 3307996-01 (Sept. 22, 2015).  Commerce required GEO to submit a new version

of its rebuttal brief redacting all references to issues raised in Baoding's original case brief.  See

id.

        Commerce published the final results of the administrative review and accompanying

memorandum on October 5, 2015.  See Final Results, 80 Fed. Reg. at 62,027.  With respect to

Evonik, the Department determined that Evonik's sales during the review period were not *bona*

*fide*, rescinded Evonik's review, and indicated that it would instruct U.S. Customs and Border

Protection to liquidate Evonik's entries at the PRC-wide antidumping duty rate.  See id.; I&D

Memo at 20–24; Final Analysis of *Bona Fide* Nature of Evonik Rexim (Nanning)

Pharmaceutical Co., Ltd.'s Sales, CD 88 at bar code 3404119-01, PD 249 at bar code 3404122-

01 (Oct. 5, 2015) ("Commerce Final *Bona Fide* Sales Memo for Evonik").  With regard to

Baoding, Commerce determined that Baoding's sale during the review period was *bona fide* and

assigned a calculated dumping margin of 143.87 percent.  See Final Results, 80 Fed. Reg. at

62,027; I&D Memo at 11–12; Final Analysis Memorandum and Business Proprietary *Bona Fide*

Analysis for Baoding Mantong Fine Chemistry Co., Ltd., CD 89 at bar code 3404441-01, PD

250 at bar code 3404464-01 (Oct. 5, 2015) ("Commerce Final *Bona Fide* Sale Memo for

Baoding").  To calculate Baoding's normal value, Commerce used import statistics for aqueous

ammonia as the surrogate value for Baoding's liquid ammonia factor of production input and

used financial statements from two Indonesian companies to determine the surrogate financial

ratios.  See Final Results, 80 Fed. Reg. at 62,027; I&D Memo at 11–12.  The Department granted

Baoding an offset to normal value for its sales of hydrochloric acid and ammonium chloride,

which were generated as by-products of Baoding's glycine production process.  See Final

Results, 80 Fed. Reg. at 62,027; I&D Memo at 11–12.

The Parties commenced separate actions contesting several of Commerce's

determinations in the Final Results, and the court consolidated these actions on January 21, 2016.

See Order, Jan. 21, 2016, ECF No. 25 (granting Defendant's motion for consolidation).

Plaintiffs and Consolidated Plaintiffs filed their respective Rule 56.2 motions and the court held

oral argument on March 8, 2017.  Evonik subsequently filed a motion to sever and stay its claim

regarding the application of the PRC-wide antidumping duty rate. See Mot. Sever Claim and to

Stay Severed Claim, May 25, 2017, ECF No. 68.  The court granted the motion to sever this

claim from Evonik's complaint and to stay the claim pending the final disposition of a similar

Case 1:15-cv-00296-JCG   Document 78   Filed 08/08/17   Page 6 of 21

Consol. Court No. 15-00296           **PUBLIC VERSION**                           Page 6

claim in <u>Baoding Mantong Fine Chemistry Co., Ltd. v. United States</u>, Court No. 12-00362.  <u>See</u>

Order, June 1, 2017, ECF No. 70; <u>Evonik Rexim (Nanning) Pharmaceutical Co. Ltd. v. United</u>

<u>States</u>, Court No. 17-00132.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over Commerce's final determination in an administrative

review of an antidumping duty order.  <u>See</u> 28 U.S.C. § 1581(c) (2012);[1] Section

516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii)

(2012).[2]  The court will uphold the Department's "determinations, findings, or conclusions"

unless "unsupported by substantial evidence on the record, or otherwise not in accordance with

law."  19 U.S.C. § 1516a(b)(1)(B)(i).  When reviewing substantial evidence challenges to

Commerce's decisions in an administrative review, the court assesses whether the agency action

is "unreasonable" given the record as a whole.  <u>See</u> <u>Nippon Steel Corp. v. United States</u>, 458

F.3d 1345, 1350–51 (Fed. Cir. 2006).

## DISCUSSION

The court will address the Parties' arguments as follows: (I) Commerce's determinations

regarding Evonik and (II) Commerce's determinations regarding Baoding.

### I. Commerce's Determinations Regarding Evonik

### A. Evonik's Sales During the Period of Review

Evonik contests Commerce's determination that Evonik's sales during the period of

review were not *bona fide*.  <u>See</u> Evonik Pls.' Mem. Law Support Rule 56.2 Mot. J. Agency R. 7–

---

[1] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provision of Title 19 of the U.S. Code, 2012 edition.

14, May 20, 2016, ECF No. 31-2 ("Evonik Rule 56.2 Memo in Support").  Evonik argues that

the Department relied improperly on facts such as high sales prices and the absence of factor of

production information.[3]  <u>See id.</u>  Defendant asserts that Commerce conducted a proper analysis

and its determination was supported by substantial evidence.  <u>See</u> Def.'s Opp. to Pls.',

Consolidated Pl.'s, and Def.-Intervenor's Mots. J. Upon Agency R. 15–21, Dec. 9, 2016, ECF

No. 51 ("Def. Mem. Opp. Rule 56.2 Mots.").

     The amount of an antidumping duty is calculated from the difference between the

"normal value"[4] and "export price"[5] of the subject imports.  <u>See</u> 19 U.S.C. § 1675(a)(2)(A).

Commerce may exclude sales that would otherwise be included in the calculation of the export

price if Commerce determines that the sales are not *bona fide*.  <u>See</u> <u>Tianjin Tiancheng Pharma.</u>

<u>Co. v. United States</u>, 29 CIT 256, 259, 366 F. Supp. 2d 1246, 1249 (2005).  A sale is not *bona*

*fide* when it is "unrepresentative or extremely distortive."  <u>Am. Silicon Techs. v. United States</u>,

24 CIT 612, 616, 110 F. Supp. 2d 992, 995 (2000).  The Department employs a "totality of the

circumstances" analysis when evaluating whether a sale is *bona fide* and considers, *inter alia*,

factors such as: (1) the timing of the sale; (2) the price and quantity of the sale; (3) the expenses

---

[3] Evonik also complains that Commerce improperly relied on Evonik's lack of [[
               ]].  <u>See</u> Evonik's Rule 56.2 Memo in Support 11.

[4] Normal value is the "the price at which the foreign like product is first sold . . . for consumption
in the exporting country, in the usual commercial quantities and in the ordinary course of trade
and, to the extent practicable, at the same level of trade as the export price or constructed export
price."  19 U.S.C. § 1677b(a)(1)(B).  The price used to calculate normal value should be from "a
time reasonably corresponding to the time of the sale used to determine the export price or
constructed export price."  19 U.S.C. § 1677b(a)(1)(A); <u>see also</u> <u>infra</u> note 11 (discussing
calculation of normal value in a non-standard case involving a nonmarket economy).

[5] Export price is "the price at which the subject merchandise is first sold . . . before the date of
importation by the producer or exporter of the subject merchandise outside of the United States
to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to
the United States."  19 U.S.C. § 1677a(a).

arising from the transaction; (4) whether the goods were resold at a profit; and (5) whether the

transaction was at arm's-length.  See <u>Tianjin Tiancheng</u>, 29 CIT at 260, 366 F. Supp. 2d at 1250.

The weight that Commerce gives to each factor depends on the specific circumstances of each

case.  <u>See id.</u> at 275, 366 F. Supp. 2d at 1263.

   Commerce concluded that Evonik's sales were not *bona fide* because of "(1) the atypical

nature of Evonik's price; and (2) the atypical circumstances surrounding the sales."  Commerce

Final *Bona Fide* Sales Memo for Evonik at 8.  Commerce considered Evonik's price per

kilogram of glycine compared to Baoding's price and the highest U.S. spot market price.[6]  <u>See</u>

<u>id.</u>  The Department determined that this pricing was "'aberrational' and not based on any

commercial circumstances."  <u>Id.</u> at 7.[7]  Commerce considered other "atypical circumstances"

together with the aberrational price to support its conclusion.  <u>See id.</u> at 8.[8]  Commerce also

found it unusual that Evonik could not provide certain factor of production information from its

supplier.  <u>See id.</u>  Despite Evonik's argument that the Department relied merely on the high sales

price in reaching its conclusion, <u>see</u> Evonik Rule 56.2 Memo in Support 7–14, it is clear to the

---

[6] Commerce found Evonik's price per kilogram of glycine was [[                    ]] than
Baoding's price and [[                    ]] than the highest U.S. spot market price.  <u>See</u>
Commerce Final *Bona Fide* Sales Memo for Evonik at 7; Comments of GEO Specialty
Chemicals, Inc. on the Resp. of Evonik Rexim (Nanning) Pharmaceutical Co., Ltd. to the Second
Suppl. Questionnaire for Sections A and C at Attach. B, CD 57 at bar code 3242121-01, PD 144
at bar code 3242123-01 (Nov. 18, 2014).

[7] Commerce further questioned "[[

                                                   ]]."  Commerce Final *Bona Fide* Sales
Memo for Evonik at 8.

[8] For example, Commerce questioned the arm's-length nature of the sales because there was
evidence that Evonik did not charge [[                              ]].  <u>See id.</u>; *Bona Fide*
Nature of Evonik Rexim (Nanning) Pharmaceutical Co., Ltd.'s Sales at 6, CD 72 at bar code
3268213-01, PD 206 at bar code 3268214-01 (Mar. 31, 2015) (Commerce's preliminary analysis
of Evonik's *bona fide* sales).

court that the Department engaged in a "totality of the circumstances" analysis that considered an array of record evidence before the agency.  See Commerce Final *Bona Fide* Sales Memo for Evonik at 7–8.  The court finds, therefore, that Commerce's conclusion that Evonik's sales were not *bona fide* was supported by substantial evidence.

### B. Commerce's Assignment of the PRC-Wide Rate to Evonik

Evonik's Rule 56.2 motion challenged Commerce's assignment of the PRC-wide antidumping duty rate.  See Evonik Rule 56.2 Memo in Support 14–16.  Evonik filed a subsequent motion to sever and stay this claim.  See Motion to Sever a Single Claim and to Stay the Severed Claim, May 25, 2017, ECF No. 68.  The court granted Evonik's motion on June 1, 2017 and thus will not address Evonik's antidumping duty rate issue in this opinion.  See Order, June 1, 2017, ECF No. 70 (granting Evonik's motion to sever and stay a single claim); Evonik Rexim (Nanning) Pharmaceutical Co. Ltd. v. United States, Court No. 17-00132.

### II. Commerce's Determinations Regarding Baoding

### A. Baoding's Sale During the Period of Review

GEO argues that Commerce erred in finding that Baoding's sale during the review period was *bona fide*.  See Brief Supp. Pl. GEO Specialty Chemicals, Inc.'s Rule 56.2 Mot. J. Upon Agency R. 12–22, May 20, 2016, ECF No. 32 ("GEO Rule 56.2 Memo in Support").  GEO asserts that the sale was not *bona fide* because the quantity of the sale was lower than in prior years and the sale was not at arm's-length.[9]  See id.  Defendant contends that Commerce's determination was based on an appropriate application of the "totality of the circumstances" analysis and was supported by substantial evidence.  See Def. Mem. Opp. Rule 56.2 Mots. 9–15.

---

[9] GEO also contends that Baoding's price was [[          ]] the U.S. spot market price.  See GEO Rule 56.2 Memo in Support 17–18.

As discussed above, when Commerce conducts a *bona fide* sales analysis, it weighs

several factors and makes a final determination based on the "totality of the circumstances."  See

Tianjin Tiancheng, 29 CIT at 260, 366 F. Supp. 2d at 1250.  Commerce provided the following

explanation in support of its conclusion that Baoding's sale was *bona fide*:

> In considering all of the above factors, we conclude that Baoding Mantong's sale
> was *bona fide* based on the following findings: 1) the sale was completed prior to
> the completion of the POR; 2) the price was [different] than the U.S. spot-market
> price of glycine during early 2014; 3) the quantity was not atypical; 4) there were
> no unusual expenses arising from the POR sale; 5) there is no record evidence that
> the merchandise was not resold at a profit; and 6) the sale was made to an
> unaffiliated customer with terms set by negotiation and payment received in a
> timely manner, indicating that the sale was made at arm's length.

Antidumping Duty Administrative Review of Baoding Mantong Fine Chemistry Co., Ltd. at 5,

CD 78 at bar code 3268465-01 (Mar. 31, 2015) (preliminary results analysis of Baoding's *bona*

*fide* sale) ("Commerce Preliminary *Bona Fide* Sale Memo for Baoding").

Commerce found that although the quantity of the sale was smaller than sales in recent

years, Baoding had sold a similar quantity of glycine during the 2003–2004 administrative

review period.  See Commerce Final *Bona Fide* Sale Memo for Baoding at 5; Second Suppl.

Resp. of Baoding Mantong Fine Chemistry Co., Ltd. at 4, CD 58 at bar code 3243010-01, PD

147 at bar code 3243011-01 (Nov. 11, 2014) ("Baoding's Second Suppl. Resp.").  The

Department noted that Baoding's low volume sale "was not historically atypical."  Commerce

Final *Bona Fide* Sale Memo for Baoding at 5.  Commerce determined that Baoding's pricing was

commercially realistic because a comparable U.S. sales price could be detrimental to Baoding's

interests with respect to the antidumping calculation.[10]  See id.  The Department found that

---

[10] Baoding's price per kilogram was [[          ]] than the U.S. spot market price.  See Commerce

(footnote continued)

record evidence established that Baoding's sale was completed during the period of review, there

were no unusual expenses related to the transaction, and the product was sold by Baoding for a

profit.  See id. at 4–5; Section A Resp. of Baoding Mantong Fine Chemistry Co., Ltd. at Ex. A-7,

CD 11 at bar code 3211346-04, PD 46 at bar code 3211355-03 (June 24, 2014); Sections C and

D Resp. of Baoding Mantong Fine Chemistry Co., Ltd. at C10–C11 and App. C-1, CD 21–22 at

bar code 3216145-01–03, PD 57–58 at bar code 3216156-01–03 (July 15, 2014) ("Baoding's

Sections C and D Resp."); Baoding's Second Suppl. Resp. at 3 and Ex. S2-1.  Commerce

concluded that the transaction between Baoding and its purchaser appeared to be at arm's-length

because Baoding and the purchaser were not affiliated through family members and did not have

any other apparent personal, financial, or business ties.  See Commerce Final *Bona Fide* Sale

Memo for Baoding at 6; Commerce Preliminary *Bona Fide* Sale Memo for Baoding at 5; Suppl.

Resp. of Baoding Mantong Fine Chemistry Co., Ltd. at 5, CD 39–40 at bar codes 3226883-01–

02, PD 86–87 at bar codes 3326887-01–02 (Sept. 5, 2014) ("Baoding's First Suppl. Resp.");

Third Suppl. Resp. of Baoding Mantong Fine Chemistry Co., Ltd. at 1, CD 62 at bar code

3258275-01, PD 157 at bar code 3258867-01 (Feb. 6, 2015) ("Baoding's Third Suppl. Resp.").

Considering all factors in totality, the court finds that Commerce's deliberation of the record

evidence was reasonable and the determination that Baoding's sale was *bona fide* was supported

by substantial evidence.

---

Final *Bona Fide* Sale Memo for Baoding at 5; Comments of GEO Specialty Chemicals, Inc. on
Section A Questionnaire Resps. of Baoding Mantong Fine Chemistry Co., Ltd. and Evonik
Rexim (Nanning) Pharmaceutical Co., Ltd. at 6 and Ex. B, CD 13 at bar code 3211346-01, PD
47 at bar code 3213644-01 (July 3, 2014).

## B. Commerce's Surrogate Value Selection

### i. Baoding's Liquid Ammonia Factor of Production

Baoding argues that Commerce did not choose the best available information when it

selected the surrogate value[11] for liquid ammonia to calculate Baoding's normal value.  See

Mem. Points and Authorities Support of Consolidated Pl.'s Rule 56.2 Mot. J. Agency R. 13–22,

May 19, 2016, ECF No. 30-1 ("Baoding Rule 56.2 Memo in Support").  Baoding asserts that

Commerce selected aqueous ammonia (listed as HTS Item 2814.2000) incorrectly for the liquid

ammonia factor of production input.  See Baoding Rule 56.2 Memo in Support 13–22.  Baoding

argues that Commerce should have selected anhydrous ammonia (listed as HTS Item 2814.1000)

for the input instead of aqueous ammonia.  See id.  Baoding explains:

> In the final results, Commerce used a surrogate price derived from Indonesian
> import statistics for ammonia in aqueous solution (HTS Item 2814.2000), rather
> than the import statistics for anhydrous ammonia (HTS Item 2814.1000), to value
> the reported liquid ammonia inputs.  The administrative record showed that the
> liquid ammonia used by Baoding Mantong had the chemical formula, molecular
> weight, purity level and HTS classification consistent with anhydrous
> ammonia. . . .
>
> That product, also known as ammonium hydroxide, has an entirely different
> chemical formula, molecular weight, and HTS classification as compared to liquid
> (anhydrous) ammonia and was, therefore, not specific to the liquid ammonia
> inputs used by Baoding Mantong to produce the subject merchandise.

Id. at 16, 20.

---

[11] When subject merchandise is exported from a nonmarket economy and Commerce determines
that available information does not permit the use of the standard normal value calculation,
Commerce calculates normal value based on surrogate values for "the factors of production
utilized in producing the merchandise" added to the "amount for general expenses and profit plus
the cost of containers, coverings, and other expenses."  19 U.S.C. § 1677b(c)(1)(B).  The
Department will generally select, to the extent practicable, surrogate values that are publicly
available, product-specific, representative of a broad-market average, and contemporaneous with
the period of review.  See Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1386
(Fed. Cir. 2014).

Defendant argues that because Commerce rejected Baoding's untimely submission of the redacted version of its May 8, 2015 case brief, Baoding failed to exhaust its administrative remedies and is barred from challenging Commerce's surrogate value selection for liquid ammonia before the court.[12]  See Def. Mem. Opp. Rule 56.2 Mots. 42–43.  Baoding counters that exhaustion should not preclude the court from reaching the issue because Commerce erred in determining that the case brief contained untimely-submitted factual information and abused its discretion in rejecting the late-filed redacted case brief.  See Baoding Rule 56.2 Memo in Support 22–29.

Commerce characterized the disputed sentence in Baoding's brief as new factual information "rebutting, clarifying, or correcting information on the record."  Commerce Aug. 27 Letter.  The one sentence at issue in Baoding's administrative case brief reads as follows: "Because Baoding Mantong's attempt to correct those errors was made only after the completion of the Department's verification, the Department determined not to accept Baoding Mantong's corrections to the record.  Id."  Baoding's Administrative Case Brief at 8.

In order to assess whether Commerce properly characterized the sentence at issue, the court looks to the regulatory definition, which reads in relevant part:

Factual information.  "Factual information" means:

(i)      Evidence, including statements of fact, documents, and data submitted either in response to initial and supplemental questionnaires, or, to rebut, clarify, or correct such evidence submitted by any other interested party;

---

[12] The court must, where appropriate, require parties to exhaust administrative remedies before bringing a claim to the CIT.  See 28 U.S.C. § 2637(d).  Requiring exhaustion ensures that the agency has an opportunity to correct any of its own mistakes before dealing with judicial review of its actions, serves to protect administrative agency authority, and promotes judicial efficiency. See Corus Staal BV v. United States, 502 F.3d 1370, 1379–80 (Fed. Cir. 2007) (citing McCarthy v. Madigan, 503 U.S. 140, 145 (1992)).

(ii)     Evidence, including statements of fact, documents, and data submitted
         either in support of allegations, or, to rebut, clarify, or correct such
         evidence submitted by any other interested party.

19 C.F.R. § 351.102(b)(21) (2012).[13]   The court finds that the sentence at issue is clearly a legal

argument made by counsel in its brief, and is neither a statement of fact, document, nor data that

would qualify as "evidence" within the meaning of the relevant regulatory definition for "factual

information."  Moreover, it is well-settled that arguments made by counsel are not evidence.  See

Gemtron Corp. v. Saint-Gobain Corp., 572 F.3d 1371, 1380 (Fed. Cir. 2009).

       The court concludes that Commerce excluded Baoding's brief from the record

improperly because the text at issue in Baoding's case brief is not new factual information under

the applicable regulatory definition.  The court finds that Commerce's rejection of Baoding's

entire late-filed brief and all arguments regarding the surrogate value selection for liquid

ammonia was erroneous.  The Department should have considered the arguments in Baoding's

brief and any ensuing arguments from other parties when calculating Baoding's normal value.

       Commerce did not mention the issue of liquid ammonia, whether anhydrous or aqueous,

in its Final Results and I&D Memo.  In its brief before the court, Defendant merely asserted that

"Commerce properly selected aqueous ammonia to use in its surrogate value calculation."  Def.

Mem. Opp. Rule 56.2 Mots. 36.  Defendant also noted in its brief that the Department used

anhydrous ammonia, the input proposed by Baoding here, in two prior administrative reviews

stemming from the same antidumping order on glycine from China.  See id.  In an attempt to

distinguish those results from the instant review, Defendant explained in its filing that "[t]he

record in this review, unlike the records of the 2005–2006 review and the [2006–2007] review,

---

[13] All further citations to Title 19 of the Code of Federal Regulations are to the 2012 edition.

[did] not contain documentation of the chemical reaction used by Baoding to produce glycine or any records that show the type of ammonia used in that reaction." Id.

Although Commerce has discretion to determine which evidence is the "best available information," Commerce's findings must be reasonable and supported by substantial evidence on the record. See Qingdao Sea-Line Trading Co., 766 F.3d at 1386; Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States, 268 F.3d 1376, 1382 (Fed. Cir. 2001). The court examines the information used by the Department by inquiring "whether a reasonable mind could conclude that Commerce chose the best available information." Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1341 (Fed. Cir. 2011). In this case, Commerce improperly excluded Baoding's arguments from consideration.

While Commerce did not mention any reasons for selecting aqueous ammonia in its Final Results or I&D Memo, Defendant confirmed that Commerce relied on its selection in its normal value calculations. See Def. Mem. Opp. Rule 56.2 Mots. 34–36. The court notes that Commerce used anhydrous ammonia, not aqueous ammonia, in two prior reviews of the same antidumping order for glycine. See Glycine from the People's Republic of China, 73 Fed. Reg. 55,814 (Dep't Commerce Sept. 26, 2008) (final results of antidumping duty administrative review and final rescission, in part; 2006–2007); Glycine from the People's Republic of China, 72 Fed. Reg. 58,809 (Dep't Commerce Oct. 17, 2007) (final results of antidumping duty administrative review and final rescission, in part; 2005–2006). The court does not conclude that the factor of production input of aqueous ammonia was incorrect as a factual matter. Rather, in light of the deficiencies in the Department's explanation, the court directs the Department to accept Baoding's administrative case brief, review the relevant record (including the arguments

Case 1:15-cv-00296-JCG   Document 78   Filed 08/08/17   Page 16 of 21

Consol. Court No. 15-00296          **PUBLIC VERSION**                          Page 16

put forth by Baoding and GEO), and reach a well-reasoned and adequately-explained finding as

to the appropriate surrogate value for Baoding's liquid ammonia input.

### ii. Selection of Financial Ratios

GEO challenges Commerce's selection of surrogate financial ratios by arguing that

Commerce failed to explain adequately why the production process of the selected companies

was comparable to that of Baoding's production of glycine.  See GEO Rule 56.2 Memo in

Support 28–32.  Defendant argues that Commerce selected surrogate financial ratios of

companies with similar production capability to Baoding, which represented the best available

information.  See Def. Mem. Opp. Rule 56.2 Mots. 31–35.

Commerce has wide discretion when selecting the best available information to

determine the most accurate dumping margin.  See Qingdao Sea-Line Trading Co., 766 F.3d at

1386; Shakeproof Assembly Components, 268 F.3d at 1382.  Commerce must choose financial

ratios from "producers of identical or comparable merchandise in the surrogate country" when

selecting surrogate financial statements.  See 19 C.F.R. § 351.408(c)(4).  The Department

normally engages in a three-part analysis to determine whether the company in question

produces "comparable merchandise," focusing on physical characteristics, end uses, and

production processes.  See Jiaxing Brother Fastener Co. v. United States, 34 CIT 1455, 1464–65,

751 F. Supp. 2d 1345, 1354–55 (2010); Shanghai Foreign Trade Enterprises Co. v. United States,

28 CIT 480, 490, 318 F. Supp. 2d 1339, 1348 (2004).  Commerce also has a practice of selecting

financial information from producers who have production experience similar to the respondent.

See, e.g., Glycine from the People's Republic of China, 72 Fed. Reg. 58,809 (Dep't Commerce

Oct. 17, 2007) (final results of antidumping duty administrative review and final rescission, in

part; 2005–2006) and Issues and Decision Memorandum for the Final Results of the 2005–2006

Case 1:15-cv-00296-JCG   Document 78   Filed 08/08/17   Page 17 of 21

Consol. Court No. 15-00296          **PUBLIC VERSION**                    Page 17

Antidumping Duty Administrative Review at 11–13, A-570-836, (Oct. 9, 2007), <u>available at</u>

http://enforcement.trade.gov/frn/summary/prc/E7-20452-1.pdf (last visited July 25, 2017);

<u>Persulfates from the People's Republic of China</u>, 70 Fed. Reg. 6,836 (Dep't Commerce Feb. 9,

2005) (final results of antidumping duty administrative review; 2002–2003) and Issues and

Decision Memorandum for the 2002–2003 Antidumping Duty Administrative Review of

Persulfates from the People's Republic of China at 4–6, A-570-847, (Feb. 9, 2005), <u>available at</u>

http://enforcement.trade.gov/frn/summary/prc/E5-537-1.pdf (last visited July 25, 2017); <u>Certain</u>

<u>Frozen and Canned Warmwater Shrimp from the People's Republic of China</u>, 69 Fed. Reg.

70,997 (Dep't Commerce Dec. 8, 2004) (notice of final determination of sales at less than fair

value) and Issues and Decision Memorandum for the Antidumping Duty Investigation of Certain

Frozen and Canned Warmwater Shrimp from the People's Republic of China at 62, A-570-893,

(Dec. 8, 2004), <u>available at</u> http://enforcement.trade.gov/frn/summary/prc/04-26976-1.pdf (last

visited July 25, 2017).

      GEO submitted the financial information of several Indonesian pharmaceutical

companies for Commerce to determine surrogate financial ratios.  <u>See</u> I&D Memo at 13.  The

Department explained that the companies suggested by GEO employed "much more advanced"

processes than Baoding's production of glycine, and thus were not reflective of Baoding's

business activities.  <u>See id.</u> at 18–19; Preliminary Results Memo at 19.  Instead, Commerce used

financial ratios from two Indonesian producers, PT Budi Starch and Sweetener Tbk ("PT Budi")

(a starch and sweetener manufacturer) and PT Lautan Luas Tbk ("PT Lautan") (a chemical

company), after finding that these companies had production processes comparable to Baoding's.

<u>See</u> I&D Memo at 17–18; Preliminary Results Memo at 19.  Commerce attempted to justify the

selection of PT Budi and PT Lautan by explaining why the companies suggested by GEO were

inadequate, see I&D Memo at 18, but failed to cite any record evidence or to provide adequate

explanations to demonstrate why PT Budi's and PT Lautan's production experiences were

comparable to Baoding's business activities.  The Department's explanation contained mere

conclusory statements regarding the similarity in production processes between Baoding, PT

Budi, and PT Lautan.  See I&D Memo at 19 ("[T]he companies have a comparable production

process to producers of glycine . . . ."); Preliminary Results Memo at 19 ("After considering all

surrogate financial statements, the Department determined to use the financial information of

two Indonesian producers of merchandise with comparable production processes as glycine for

the purposes of these preliminary results . . . ."); Surrogate Values for the Preliminary Results of

Review at 7, PD 204 at bar code 3268210-01 (Mar. 31, 2015) ("[PT Budi and PT Lautan] engage

in production processes comparable to the merchandise under review.").  Although Commerce is

given broad discretion to select the best available information when choosing surrogate values,

the Department failed to adequately support its determination that PT Budi and PT Lautan

engaged in production processes comparable to Baoding's glycine production.  This issue is

remanded for Commerce to address the court's concerns and support its selection of the

companies used to determine surrogate financial ratios with substantial evidence on the record.

### C. Baoding's By-Product Offset

GEO argues that Commerce erred in granting Baoding a by-product offset when

calculating its normal value.  See GEO Rule 56.2 Memo in Support 22–28.  According to GEO,

Baoding did not provide sufficient evidence to support Commerce's decision to grant the by-

product offset.  See id.  Defendant counters that Baoding submitted documentation such as

receipts, payment vouchers, and inventory out-slips, which enabled Commerce to determine the amount of the offset for the review period.  See Def. Mem. Opp. Rule 56.2 Mots. 24–28.

Commerce is tasked with calculating the normal value through use of surrogate values when subject merchandise is imported from a nonmarket economy country.  See 19 U.S.C. § 1677b(c)(1).  The Department must examine the "quantities of raw materials employed" by a company in reviewing factors of production to calculate normal value.  See id. at § 1677b(c)(3)(B).  Not all raw materials are incorporated into the finished product, however, and Commerce often offsets normal value by revenue derived from sales of by-products generated during the production of subject merchandise.  See Arch Chems., Inc. v. United States, 33 CIT 954, 956 (2009); Ass'n of Am. School Paper Suppliers v. United States, 32 CIT 1196, 1205 (2008).  Generally, the Department requires a party requesting a by-product offset to demonstrate that there was a quantity of by-product generated during the period of review and that the by-product had commercial value.  See Am. Tubular Prod., LLC. v. United States, 38 CIT __, __, Slip Op. 14-116, at *17 (Sept. 26, 2014); Arch Chems., 33 CIT at 956; I&D Memo at 11.  The burden of substantiating any by-product offset falls to the respondent, who must present Commerce with sufficient information to support claims for the offset.  See Arch Chems. 33 CIT at 956.

Commerce examined several factors when it considered whether to grant Baoding a by-product offset for its production of hydrochloric acid and ammonium chloride.  First, Baoding introduced evidence on the record demonstrating the quantity of the by-products generated from the production of glycine.  See Baoding's Sections C and D Resp. at D-15–D-16.  Although Baoding did not maintain production records for the by-products, it showed that they were the result of the chemical process used to create glycine and were produced at a determinable rate

during production.  See id.  Baoding was able to determine the amount of hydrochloric acid and

ammonium chloride generated from the production of one metric ton of glycine.  See id.  By

dividing the total amount of by-product sold during the period of review by the total production

quantity of glycine, Baoding was able to calculate the requested offset.  See id.  Baoding

corroborated this calculation by providing Commerce with receipts and inventory out-slips of the

by-products sold during the review period.  See Baoding's First Suppl. Resp. at App. S1-11.

Second, Commerce considered whether Baoding sold the by-products to outside purchasers for

revenue.  See I&D Memo at 11–12.  Commerce relied on evidence, including Baoding's

inventory out-slips, payment vouchers, and receipts, when it concluded that Baoding's

hydrochloric acid and ammonium chloride by-products had commercial value.  See id.;

Baoding's First Suppl. Resp. at App. S1-11; Baoding's Third Suppl. Resp. at 6.  The court holds,

therefore, that Commerce's determination to grant Baoding a by-product offset was supported by

substantial evidence.

## CONCLUSION

For the foregoing reasons, the court concludes that: (1) Commerce's determination that

Evonik's sales were not *bona fide* was supported by substantial evidence, (2) the Department's

determination that Baoding's sale was *bona fide* was supported by substantial evidence, (3)

Commerce's determination that Baoding improperly included new factual information in its

administrative case brief was not supported by substantial evidence, (4) the Department's

selection of surrogate financial ratios was not supported by substantial evidence, and

(5) Commerce's determination to award Baoding a by-product offset was supported by

substantial evidence.  Therefore, in accordance with the foregoing, it is hereby

    **ORDERED** that Commerce's determination that Evonik's sales were not *bona fide* is

sustained; and it is further

    **ORDERED** that Commerce's determination that Baoding's sale was *bona fide* is

sustained; and it is further

    **ORDERED** that Commerce's determination to award Baoding a by-product offset is

sustained; and it is further

    **ORDERED** that this matter is remanded for Commerce to (1) accept Baoding's

administrative case brief as originally submitted to the Department on May 8, 2015, accept

GEO's rebuttal brief as originally submitted to the Department on May 13, 2015, and address

Baoding's and GEO's arguments regarding the surrogate value selection for liquid ammonia;

and (2) further explain Commerce's selection of the companies used for Baoding's surrogate

financial ratios; and it is further

    **ORDERED** that Commerce shall file its remand determination with the court on or

before September 1, 2017; and it is further

    **ORDERED** that the Parties shall file comments on the remand determination on or

before October 2, 2017; and it is further

    **ORDERED** that the Parties shall file any replies to the comments on or before October

16, 2017.

                                   /s/ Jennifer Choe-Grove
                                    Jennifer Choe-Groves, Judge

Dated:    August 1, 2017
         New York, New York